IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

APR 2 3 2007

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

SIEMENS FINANCIAL SERVICES,     *
INC.,
                                *
        Plaintiff,
                                *
        v.                            Civil Action No.: RDB 06-1646
                                *
JEFFREY LOW and
JEAN-MAX HOGARTH,               *

        Defendants.             *

*    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION

This action arises out of a Complaint that Siemens Financial Services, Inc., a Delaware

corporation ("Siemens" or "Plaintiff") filed against Jeffrey Low ("Low") and Jean-Max Hogarth

("Hogarth"), both Maryland residents (collectively "Defendants"). The Complaint alleges that

Defendants breached certain guaranty obligations made in a settlement agreement with Plaintiff.

Pending before this Court are three motions: (1) Plaintiff's Motion for Summary Judgment

(Paper No. 28); (2) Plaintiff's Motion to Dismiss Defendants' Amended Counterclaim (Paper

No. 27); and, (3) Defendants' Motion for Joinder (Paper No. 19). The central issue raised by

these motions is whether this Court should enforce the consent judgment contemplated by the

parties' settlement agreement. This Court has jurisdiction based on 28 U.S.C. § 1332. The

parties' submissions on the above motions have been reviewed and no hearing is necessary.[1] *See*

Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Plaintiff's Motion for Summary

---

[1]     On October 11, 2006, this Court conducted a hearing on related motions. *See*
Background and Procedural History, *infra*. The facts of this case, which are largely undisputed,
were presented by counsel during that hearing.

Judgment is GRANTED, Plaintiff's Motion to Dismiss Defendants' Amended Counterclaim is GRANTED, and Defendants' Motion for Joinder is DENIED.  As a result, judgment will be entered in favor of Plaintiff and against Defendants and a hearing will be conducted with respect to damages, interest, attorneys fees, and costs.

## BACKGROUND AND PROCEDURAL HISTORY

On November 9, 2004, Siemens Medical Solutions USA, Inc. ("SMS") and TLC Imaging, Inc. ("TLC") entered into a lease agreement whereby SMS agreed to lease one "Magnetom Concerto system" and its related equipment to TLC (the "Lease").[2]  On November 10, 2004, TLC executed a promissory note titled Number 88080002 in the principal amount of $200,000 in favor of SMS (the "Promissory Note").  On October 3, 2004, Defendants Low and Hogarth executed personal guarantees pursuant to which they each unconditionally guaranteed all obligations under the Promissory Note (the "Guaranties").  On June 27, 2005, SMS assigned the Promissory Note, the Lease, the Guaranties and all of SMS' rights and remedies to Plaintiff Siemens.

When the payments on the Promissory Note became due, disputes arose and the required payments were not made.  Plaintiff claimed that TLC defaulted on its obligations by failing to make the required payments and that, after this default, Defendants Low and Hogarth breached their respective guaranty obligations.  (Compl. ¶ 10, 12, 14.)  As a result, in September 2005, Plaintiff filed a complaint against TLC, Low and Hogarth in the District Court for Baltimore

---

[2]     The referenced "Magnetom Concerto system" is not explained in the parties' submissions.

County, Maryland.[3]  *See Siemens Financial Services, Inc. v. TLC Imaging, LLC, et al.*, Case No. 08040027928-2005.

On September 30, 2005, the parties' litigation in the District Court for Baltimore County was resolved pursuant to a Settlement Agreement among Siemens, TLC, Low, and Hogarth dated October 14, 2005.  (*See* Compl. Ex. 1 (the "Settlement Agreement").)  The Settlement Agreement provided that Defendants "defaulted on [their] obligations."  (Settlement Agreement ¶¶ H-L & ¶ 1.)  The Settlement Agreement also provided that TLC, Low and Hogarth agreed to make the following payments to Siemens:

    a.    $20,000 upon execution of the Agreement, which payment shall be applied to the outstanding balance owed to Siemens under the Promissory Note;

    b.    $6,732.09 on or before October 6, 2005, which payment shall be applied to the outstanding balance owed to Siemens under the Lease; and

    c.    $45,365.97 on or before November 15, 2005, $18,187.57 of which shall be applied to the Promissory Note and $27,178.40 of which shall be applied to the Lease.

(Settlement Agreement ¶ 2; Defs.' Ans. ¶ 20.)  The Settlement Agreement also stated that "TLC shall resume making its regularly scheduled monthly payments under the Promissory Note and the Lease until TLC's obligations under the Promissory Note and the Lease are fully and finally satisfied . . . ."  (Settlement Agreement ¶ 3, Defs.'s Ans. ¶ 20.)

The Settlement Agreement provided that Siemens could file a consent judgment in the event that TLC, Low or Hogarth (1) defaulted on their respective obligations under the

---

[3]    The record reflects a dispute regarding the date that this complaint was filed, (*compare* Pl.'s Compl. ¶ 17 *with* Defs.' Am. Ans. ¶ 17), which has no bearing on this Court's decision.  Plaintiff does not explain why it filed suit in the District Court for Baltimore County given that the "exclusive original civil jurisdiction" of that court is limited to "action[s] in contract or tort" where the "damages claimed do not exceed $25,000. . . ."  MD Code Ann., Cts. & Jud. Proc., § 4-401(a) (West 2007).  *See also*  Discussion § II.B, *infra* (addressing jurisdiction of the District Court for Baltimore County in further detail).

Settlement Agreement, the Promissory Note, the Lease, or the Guaranties, and, (2) remained in

default for at least 10 days.  (Settlement Agreement ¶ 7; *see also id*. at Ex. A (the "Consent

Judgment").)  The contemplated Consent Judgment would:

a. grant[] Siemens the right to execute the judgment against (a) TLC for the entire remaining balance due under the Lease, (b) TLC for immediate possession of the Leased Equipment, and (c) TLC, Low, and Hogarth, jointly and severally, for the entire remaining balance of the Promissory Note; and

b. order[] that TLC and any officers or employees of TLC (1) transfer the Leased Equipment to Siemens forthwith and/or assist Siemens in obtaining possession of the Leased Equipment wherever it may be located and (2) be restrained and enjoined from interfering in any way with the prompt, expeditious and unimpeded transfer of the Leased Equipment to Siemens.

(Settlement Agreement ¶ 7; *see also* Compl. Ex. 2; Defs.' Am. Ans. ¶ 21.)  Finally, Defendants,

as well as TLC, waived and released any claims they had or may have against Siemens relating to

the Promissory Note or the Guaranties.  (Settlement Agreement ¶ 5; *see also* Defs.'s Am. Ans. ¶

18.)

On November 15, 2005, Defendants did not make the payment of $45,365.97

contemplated by Paragraph 2(c) of the Settlement Agreement.  There is no dispute that, the next

day, Siemens sent written notice of this default to TLC, Low and Hogarth in accordance with

Paragraphs 7 and 8 of the Settlement Agreement.  According to Siemens, moreover, TLC, Low

and Hogarth remained in default of their obligations for at least ten days.  (Pl.'s Mem. Supp.

Mot. Summ. J. p. 6.)

On December 15, 2005, Siemens filed a Motion for Entry of Judgment by Consent in the

previously initiated lawsuit in the District Court for Baltimore County.  On March 9, 2006, on the

morning that the court was scheduled to hear oral arguments concerning that motion, TLC

declared bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland.  (Compl. ¶ 26; Defs.' Am. Ans. ¶ 26.)  As a result, the claims in the previously initiated lawsuit against TLC were stayed and the claims against Low and Hogarth were voluntarily dismissed without prejudice.[4]  (St. John Aff. ¶ 14 & Ex. E.)

On June 6, 2006, Plaintiff filed a Complaint against Defendants in this Court.  Extensive motion practice occurred during the early stages of this litigation.  (*See, e.g.*, Papers Nos. 4, 12-14, 16, & 20.)  On September 8, 2006, Defendants filed a Motion for Joinder of third party Siemens Medical Solutions USA, Inc.  (Paper No. 19.)  On September 20, 2006, Plaintiff filed a Motion to Dismiss Defendants' Amended Counterclaim.  (Paper No. 27.)  On September 25, 2006, Plaintiff filed a Motion for Summary Judgment.  (Paper No. 28.)  On October 11, 2006, this Court conducted a hearing to address certain motions.  Following that hearing, this Court ruled that: (1) Plaintiff's Motion to Dismiss Counterclaims was withdrawn as moot; (2) Plaintiff's Motion to Strike Defendants' Affirmative Defense was granted; (3) Plaintiff's Motion to Strike Improper Answers was granted; and, (4) Defendants' Motion to Amend/Correct Answer, as amended during the hearing, was granted.  (*See generally* Paper No. 37.)  In addition, this Court issued an order directing Defendants to file an Amended Answer by October 12, 2006 and establishing a briefing schedule with respect to Plaintiff's Motion for Summary Judgment.

---

[4]     Defendants appealed the District Court's decision to grant Siemens' motion to voluntarily dismiss its state court complaint against Low and Hogarth without prejudice.  (*See* Defs' Mem. Supp. Opp. Summ. J. p. 13 ("If the Circuit Court reverses the District Court, then this would be a dismissal with prejudice and would require dismissal of the Plaintiff's Complaint.").)  On January 29, 2007, the Circuit Court for Baltimore County affirmed the District Court's decision.  (*See* Paper No. 50.)  On February 23, 2007, Defendants filed a Petition for Writ of Certiorari with the Court of Appeals of Maryland.  (*See* Paper No. 52.)  As of March 21, 2007, that appeal remains pending.  (*See* Paper No. 55.)

(*See* Paper No. 36.)

## DISCUSSION

I.     **The Complaint.**

Plaintiff's Complaint asserts four causes of action.  In Count I, Plaintiff moves for entry

of the judgment by consent contemplated by the Settlement Agreement and requests that this

Court reform the agreed-upon consent judgment to reflect that it may be entered in any court with

subject matter jurisdiction.  (*See* Compl. ¶¶ 30-34.)  In Count II, Plaintiff asserts a claim for

breach of the Settlement Agreement against Defendants.  (*Id.* at ¶¶ 35-41.)  In Count III, Plaintiff

asserts a cause of action against Defendant Low for breach of his personal guaranty for all

amounts due on the underlying Promissory Note.  (*Id.* at ¶¶ 42-58.)  Finally, in Count IV,

Plaintiff asserts a cause of action against Defendant Hogarth for breach of his personal guaranty.

(*Id.* at ¶¶ 59-65.)

II.    **Plaintiff's Motion for Summary Judgment.**

A.     **Standard of Review.**

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil

Procedure when there is no genuine issue as to any material fact, and the moving party is plainly

entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986), the Supreme Court explained that, in considering a motion for summary

judgment, "the judge's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial."  A dispute about a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* at 248.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). However, the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted). Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## B.    Reformation of Consent Judgment.

In Count I of the Complaint, Plaintiff asks this Court to reform the agreed-upon Consent Judgment so that it may be entered in any court with subject matter jurisdiction. Plaintiff seeks reformation because the caption to the Consent Judgment indicates that this document would be filed "IN THE DISTRICT COURT FOR BALTIMORE COUNTY, Case No. 08040027928-2005." (Settlement Agreement, Ex. A.) The "exclusive original civil jurisdiction" of the District Court for Baltimore County, however, is limited to "action[s] in contract or tort" where the "damages claimed do not exceed $25,000. . . ." MD Code Ann., Cts. & Jud. Proc., § 4-401(a) (West 2007). Because the damages claimed by the Consent Judgment greatly exceed $25,000, any action based on the Consent Judgment lies outside the jurisdiction of the District Court for Baltimore County. As a result, Plaintiff seeks to reform the Consent Judgment so that it may be entered in any court

7

with subject matter jurisdiction.  In contrast, Defendants oppose reformation and argue that

Plaintiff cannot enforce the Consent Judgment as written.[5]

As a preliminary matter, because the source of this Court's jurisdiction over this case is

based on diversity of citizenship, the principles set forth in *Erie R.R. Co. v. Tompkins*, 304 U.S.

64, 78 (1983) require application of the law of Maryland to questions of substantive law.

Under the doctrine of *lex loci contractus*, Maryland applies the substantive law of the place

where the contract was made.  *See Commercial Union Ins. Co., v. Porter Hayden Co.*, 698 A.2d

1167, 1199-1200 (Md. Ct. Spec. App. 1997), *cert. denied*, 703 A.2d 147 (Md. 1997).  A contract

is made in the place where the last act necessary to make the contract binding occurs.  *Id.* at

1167.  Here, Defendants represent that "this agreement was entered into in Maryland."  (Defs'

Mem. Supp. Opp. Summ. J. p. 4.)  Both parties apply Maryland law, moreover, in interpreting

the Settlement Agreement.  (*See, e.g.*, Pl.'s Mem. Supp. Summ. J. p. 8; Defs' Opp. p. 4.)

Accordingly, this Court applies Maryland law to the Settlement Agreement.

In Maryland, a court may reform a written agreement "where there has been a mutual

mistake . . . and an agreement actually entered into, but the instrument, in its written form, does

not express what was intended by the parties thereto."  *Kishter v. Seven Courts Community Ass.,*

*Inc.*, 626 A.2d 993, 996 (Md. Ct. Spec. App. 1993) (internal quotation marks and citation

omitted); *Hoffman v. Chapman*, 34 A.2d 438, 439 (Md. 1943) (same); *see also Brockmeyer v.*

*Norris*, 10 A.2d 326, 329 (Md. 1940) (emphasizing that a court may only reform when the

mistake is mutual and not simply a mistake by one side); *Brady v. Berke*, 363 A.2d 537, 540

---

[5]      (*Cf.* Defs' Mem. Supp. Opp. Mot. Summ. J. p. 7 n.2 ("In fact if reformation
should be sought, the Court could more logically reform the contract to the jurisdictional limits
of the District Court to bring it into compliance.").)

(Md. Ct. Spec. App. 1976) (same).  The party requesting reformation must provide "clear, strong and convincing" evidence that a mutual mistake exists, as well as evidence of the actual intent of the parties.  *Brady*, 368 A.2d at 540.  Finally, in analyzing any contractual agreement, a court must take plain and unambiguous language at face value and "presume that the parties meant what they expressed."  *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 653 (Md. 2001)(quotations omitted).

In this case, the terms and provisions of the Settlement Agreement and Consent Judgment provide "clear, strong and convincing" evidence of the intent of the parties.  First, the Settlement Agreement provides a specified schedule of payments to be made by Defendants to Siemens. (Settlement Agreement ¶ 2.)  Second, the Settlement Agreement provides that "[i]n the event any of the Defendants default under this Agreement . . . Siemens may, without further notice, file the Consent Judgment . . . ."  (Settlement Agreement ¶ 7.)   Third, Plaintiff and Defendants agreed to the specific terms of the Consent Judgment, which show that Defendants agreed to entry of judgment in excess of $204,780.79, less sums paid under the Settlement Agreement.  It is difficult to understand how, in the face of such plain and unambiguous terms, Defendants can argue that the jurisdictional issue created by the caption of the Settlement Agreement is anything other than an honest mistake.  After reviewing Defendants' submissions, moreover, this Court finds that Defendants utterly fail to support their argument that the Consent Judgment should not be reformed.  Defendants offer nothing other than conclusory statements and unsupported legal argument in support of their contention that "[t]here is no reason or basis for the contract to be reformed in any way."  (Defs.' Mem. Supp. Opp. Mot. Summ. J. p. 7.)  In sum, this Court finds that the record evidence clearly and convincingly shows that the parties made a mutual mistake in

captioning the Consent Judgment for entry in the District Court for Baltimore County.  There is simply no genuine issue of material fact with respect to the parties' intent to resolve a breach of the Settlement Agreement by consent judgment.  Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED with respect to Count I of the Complaint and this Court will reform the Consent Judgment so that it may be entered in any court of competent jurisdiction.  This Court will set a briefing schedule and conduct a teleconference hearing, moreover, to address the matter of the amount of the judgment, as well as appropriate interest, costs, and fees.[6]  After this Court has determined the precise amounts, this Court will enter judgment in an amount certain in favor of Plaintiff and against Defendants.

## C.    Breach of Settlement Agreement.

In Count II of the Complaint, Plaintiff asserts a breach of contract claim against Defendants for their failure to make payments required by the Settlement Agreement.  As a preliminary matter, this Court rejects Defendants' argument that "consideration of this matter on summary judgment" should be delayed until Defendants "have had the opportunity to engage in discovery to prove their defenses."  (Defs.' Mem. Supp. Opp. Mot. Summ. J. p. 14.)  This Court acknowledges the principle that "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  *Harrods*

---

[6]    Although the amount of the principal damage request does not appear to be in dispute, this Court cannot determine from the record the precise amount of such damages.  (*See* Settlement Agreement, Ex. A (referencing a figure of $204,780.79); Pl.'s Mem. Supp. Summ. J. p. 10 (referencing a figure of $203,179.90); Paper No. 46 (proposed order filed by Plaintiff referencing a figure of $206,927.50).)  This Court notes, moreover, that Defendants take issue with the attorneys' fees requested by Plaintiff.  (*See* Defs' Mem. Supp. Opp. Mot. Summ. J. pp. 13-14 ("Plaintiff has sought a large amount of counsel fees, close to 35% of the entire original debt. . . . Even a limited perusal of the time sheets of Sachnoff Weaver shows, in the highlighted areas, that a large portion of the legal work related to the lease.").)

*Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson,* 477

U.S. at 250 n.5).  Under Rule 56(f), this Court has discretionary authority to deny a motion for

summary judgment in response to the nonmoving party's request for discovery.  *See* Fed. R. Civ.

P. 56(f) ("[T]he court may refuse the application for judgment or may order a continuance to

permit . . . discovery to be had . . . .").

  Here, Defendants have filed an affidavit under Rule 56(f) of the Federal Rules of Civil

Procedure to support their contention that additional discovery is needed.  After carefully

considering Defendants' Rule 56(f) affidavit and related arguments, however, this Court finds

that discovery on this matter would not lead to any genuine issues of material fact and is

therefore unnecessary.  Defendants Rule 56(f) affidavit does not demonstrate a specific need for

discovery.  Instead, it relies on nothing more than general, conclusory statements.  For example,

Defendants describe the facts that would be developed through discovery as including:

> [S]ubstantiation of the defenses claimed in the Amended Answer
> in ¶A as to the entry into the settlement agreement, ¶B as to both
> the settlement agreement and with regard to the alleged breach by
> TLC Imaging, L.L.C. leading to the asserted guarantor liability, ¶G
> & ¶H with regard to the asserted breach by principal obligor.  The
> other defenses are more closely linked to legal issues, but it is
> believed that factual information will be developed as well as
> necessary. . . . These facts would need to be secured by discovery
> of documents from Plaintiff and Siemens Medical Solutions,
> U.S.A., Inc. as well as by deposition of these two entities and
> possibly expert testimony with regard to the medical leasing and
> finance industry in general and these two entities in particular.

(Defs.' Mem. Supp. Opp. Mot. Summ. J. Ex. 6, ¶¶ 5-6; *see also* Am. Counterclaim ¶¶ A, B, G, &

H.)  In the context of this particular case, such statements are simply inadequate to demonstrate a

need for discovery.  *See Strag v. Board of Trustees*, 55 F.3d 943, 954 (4th Cir. 1995) (denial of

Rule 56(f) motion generally appropriate "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."); *see also Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.")

It is well established that a plaintiff may recover in an action for breach of contract if it proves "that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor*, 776 A.2d at 651 (citation omitted).  In this case, it is undisputed that Defendants agreed to pay Plaintiff the following amount under the Settlement Agreement:

> $45,365.97 on or before November 15, 2005, $18,187.57 of which shall be applied to the Promissory Note and $27,178.40 of which shall be applied to the Lease.

(Settlement Agreement ¶ 2(c); Defs.' Ans. ¶ 20.)  After reviewing the parties' submissions, this Court finds that Defendants have failed to present any evidence disputing that they did not make the above payment and thereby breached the Settlement Agreement.  Accordingly, this Court finds that there are no genuine issues of material fact with respect to Defendants' contractual obligation to pay Plaintiff $45,365.97 on or before November 15, 2005 and Defendants' breach of that obligation.

Defendants respond by asserting three affirmative defenses: (1) waiver; (2) laches; and (3) duress.  First, Defendants contend that Siemens waived its rights under the Settlement Agreement when it voluntarily dismissed its previously initiated lawsuit against Defendants in the District Court of Baltimore County, Maryland.  In Maryland, the affirmative defense of

waiver requires the "intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right . . . ." *Food Fair Stores, Inc. v. Blumberg*, 200 A.2d 166, 172 (Md. 1964). After reviewing the parties' submissions, this Court finds that the undisputed evidence establishes that Plaintiff asserted its rights against Defendants by initiating a lawsuit against Defendants in the District Court for Baltimore County, entering into a Settlement Agreement with Defendants, and initiating a second lawsuit against Defendants in this Court. Defendants have provided no evidence or legal authority to support their claim that Plaintiff intentionally relinquished its rights under the Settlement Agreement. Accordingly, Defendants cannot rely on the defense of waiver to avoid Plaintiff's Motion for Summary Judgment.

Second, Defendants attempt to evade summary judgment by invoking the doctrine of laches. In Maryland, "laches is an equitable defense that bars a plaintiff's action if the plaintiff was negligent or lacked diligence in asserting his rights, causing prejudice or injury to the defendant." *Buxton v. Buxton*, 770 A.2d 152, 158 (Md. 2001); *see also Smith v. Gehring*, 496 A.2d 317, 323 (Md. Ct. Spec. App. 1985) (suggesting that laches is unavailable in purely legal claims such as breach of contract). In their opposition papers, Defendants present no authority, evidence, or argument to suggest that laches should apply in the instant case. Defendants utterly fail to establish that Plaintiff's breach of contract claim is "stale" or that Plaintiff was negligent or lacked diligence in asserting its rights. Accordingly, this Court finds that Defendants' affirmative defense of laches is inapplicable as a matter of law.

Third, Defendants point to the affirmative defense of duress as another reason that summary judgment cannot be entered in favor of Plaintiff. In Maryland, a party asserting this defense of duress must show that the opposite party to a specific transaction made a "wrongful

act or threat" and that the complaining party was "overwhelmed by fear and precluded from using free will or judgment." *Food Fair Stores, Inc. v. Joy*, 389 A.2d 874, 881 (Md. 1978) (internal quotation marks and citation omitted). Here, Defendants claim that Siemens, in its initial lawsuit, misrepresented the worth of the equipment leased to TLC and, in the context of later bankruptcy proceedings, clarified the value of that equipment. (*See* Defs.' Mem. Supp. Opp. Mot. Summ. J. pp. 10-11 ("In seeking the replevin, Plaintiff represented that the equipment leased was worth $150,000 . . . in fact a value was established of $300,000 as the value of the equipment in the bankruptcy case.").) As a result, Defendants contend that they "felt that they had no choice but to enter into the [S]ettlement [A]greement." (*Id.* at p. 10; *see also* Low Aff. ¶ 5 ("I felt that the only way to save the company (TLC Imaging, L.L.C.) was to enter into the consent agreement.").) Even treating this evidence in the most favorable light, Defendants fail to adequately support their affirmative defense of duress. Defendants simply do not forecast evidence that would allow a reasonable factfinder to conclude that Defendants were "overwhelmed by fear and precluded from using free will or judgment." Accordingly, Defendants cannot rely on the affirmative defense of duress to avoid Plaintiff's Motion for Summary Judgment.

In sum, there is no reasonable dispute that Defendants breached the Settlement Agreement. Defendants have not presented any evidence to this Court demonstrating the existence of a genuine issue of material fact with respect to any of their affirmative defenses. As a result, Plaintiff's Motion for Summary Judgment is GRANTED with respect to Count II of the Complaint. This constitutes alternative and independent grounds for entering judgment in favor of Plaintiff and against Defendants.

### III.    Motion to Dismiss Amended Counterclaim.

### A.    Standard of Review.

Plaintiff seeks to dismiss Defendants' Counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)).  As the legal sufficiency of the complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325 (4th Cir. 2001); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).  Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).  However, while "notice pleading requires generosity in interpreting a plaintiff's complaint . . . generosity is not fantasy." *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 191 (4th Cir. 1998).

In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint

as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman*, 417 F.3d at 420; *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). However, in considering a motion to dismiss, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" nor "the legal conclusions drawn from the facts." *Eastern Shore Mkts., Inc.,* 213 F.3d at 180; *see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 578 (D. Md. 2004).

### B.   The Amended Counterclaim.

Although difficult to understand, the causes of action set forth in Defendants' Amended Counterclaim appear to arise from the following basic allegations:

- SMS allegedly agreed to loan TLC $175,000 (*See* Am. Counterclaim ¶ 2.)

- Low and Hogarth allegedly agreed to personally guarantee TLC's obligation to repay this loan. (*Id.*)

- SMS allegedly refused to provide this loan. (*Id.* at ¶ 9.)

The Amended Counterclaim asserts two causes of action. In Count I, Defendants assert a claim for "breach of contract/promissory estoppel." (*See* Am. Counterclaim ¶¶ 21-32.) In Count II, Defendants assert a claim for "fraud or in the alternative negligent misrepresentation or in the alternative equitable fraud." (*Id.* at ¶¶ 33-42.)

### C.   Breach of Contract/Promissory Estoppel.

Plaintiff moves to dismiss Count I of the Amended Counterclaim because Defendants "failed to allege the requisite elements for breach of contract . . . [and] the requisite elements for

promissory estoppel." (Pl.'s Mem. Supp. Mot. Dismiss p. 3.)  As a preliminary matter, the

parties dispute which state law—Maryland, Delaware, or New Jersey—should be applied to the

contract contemplated by the Amended Counterclaim.  This dispute is of no moment, however,

because Defendants cannot satisfy the relevant requirements under any potentially applicable

state law.

Under Maryland, Delaware, or New Jersey law, Defendants must show that a contractual

relationship existed between Plaintiff and Defendants in order to state a cause of action for

breach of contract.  *See*, *e.g.*, *Mathis v. Hargrove*, 888 A.2d 377, 396 (Md. Ct. Spec. App. 2005)

("In an action for breach of contact, the plaintiff must prove that the defendant had a contractual

obligation and that the obligation was breached.") (citation omitted); *AT&T Credit Corp. v.*

*Zurich Data Corp.*, 37 F. Supp. 2d 367, 370 (D. N.J. 1999) (same); *Winston v. Mandor*, 710 A.2d

835, 840 (Del. Ch. 1997) (same).  In this case, the documents relied upon by Defendants in their

Amended Counterclaim concern neither Plaintiff Siemens Financial Services, Inc. ("Siemens")

nor Defendants Low or Hogarth.  Instead, they concern two different corporate entities—Siemens

Medical Solutions USA, Inc. ("SMS") and TLC Imaging, Inc. ("TLC")—neither of which are a

party to this lawsuit.  In addition, Defendants fail to allege a contractual relationship between

SMS and TLC.  Defendants rely on characterizing a financing *proposal* as "the offer and

acceptance with regard to the first $100,000."[7]  (Am. Counterclaim ¶ 3; *id* at Ex. 1B.)  In their

---

[7]      Although generally a motion to dismiss "shall be treated as one for summary
judgment and disposed of as provided in Rule 56" when matters outside the pleadings are taken
into account, Fed. R. Civ. P. 12(b), this rule does not apply "for documents which are referred to
in the Complaint and upon which Plaintiff relies in bringing the action." *Biospherics, Inc. v.*
*Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997) (citations omitted), *aff'd*, 151 F.3d 180 (4th
Cir. 1998).  This principle applies with equal force to documents referred to in a counterclaim
and relied upon by a defendant.  Accordingly, this Court considers the documents attached by

opposition papers, however, Defendants concede that "it is true that the initial proposal was subject to credit review." (Defs' Mem. Supp. Opp. Mot. Dismiss p. 9.) Defendants attempt to salvage their breach of contract claim by noting that the Amended Counterclaim "does not allege that they were notified that the proposal was *not* approved by credit." (*Id.* at pp. 9-10 (emphasis added).) Even construed in the most favorable light, these documents and representations simply fail to allege the existence of a contractual relationship between Plaintiff and Defendants. Accordingly, Plaintiff's Motion to Dismiss the Amended Counterclaim is GRANTED with respect to Defendants' claim for breach of contract.[8]

Under Maryland, Delaware, or New Jersey law, a party must allege the following elements to support a claim for promissory estoppel: (1) a clear and definite promise (2) made with the reasonable expectation that the promisee will rely thereon (3) which does induce actual and reasonable reliance (4) that causes damage. *See, e.g., Pavel Enter., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 532 (Md. 1996) (promissory estoppel claim requires a clear and definite promise); *Kress v. La Villa*, 762 A.2d 682, 689 (N.J. Super. Ct. App. Div. 2000) (same); *In re Aquilla, Inc.*, 805 A.2d 184, 193 (Del. Ch. 2002) (same). In this case, Defendants fail to allege the existence of a "clear and definite" promise by Plaintiff Siemens. As already noted, the

---

Defendants in support of their Amended Counterclaim without converting Plaintiff's Motion to Dismiss to one for summary judgment.

[8]      This Court rejects Defendants' suggestion that discovery is needed with respect to Count I of the Amended Counterclaim. (*See* Defs' Mem. Supp. Opp. Mot. Dismiss p. 10 ("The Complaint is not a closing argument, nor is it even the final list of exhibits submitted for consideration by the trier of fact.  For that purpose, there is discovery to enable a party to secure all of the evidence needed to prove its case . . .").)  *See* Discussion § II.C, *supra* (discussing relevant legal principles).  This Court notes, moreover, that Defendants elected not to file a Rule 56(f) affidavit in connection with Plaintiff's Motion to Dismiss the Amended Counterclaim.

documents relied upon by Defendants in their Amended Counterclaim concern a different

corporate entity, *viz.*, SMS.  A financing proposal that is explicitly made "subject to [SMS's]

final acceptance of mutually agreeable, counter-executed lease documentation," moreover, is

simply not a promise upon which Defendants could have "reasonably relied."  Accordingly,

Plaintiff's Motion to Dismiss the Amended Counterclaim is GRANTED with respect to

Defendants' claim for promissory estoppel.

### D.      Fraud/Negligent Misrepresentation/Equitable Fraud.

Plaintiff moves to dismiss Count II of the Amended Counterclaim because Defendants

"fail[] to allege any representation made by Siemens."  (Pl.'s Mem. Supp. Mot. Dismiss p. 13.)

Under Maryland, Delaware, or New Jersey law, Defendants must allege that Plaintiff made a

representation to support a claim for fraud, negligent misrepresentation, or equitable fraud.  *See*,

*e.g.*, *B.N. v. K.K.*, 538 A.2d 1175, 1182 (Md. 1988) (Maryland standard for fraud); *Martens*

*Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 (Md. 1982) (Maryland standard for negligent

misrepresentation); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 105, 115 (Del. 2006)

(Delaware standard for fraud and equitable fraud); *In re Med. Wind Down Holdings III, Inc.*, 332

B.R. 98, 102 (Bankr. D. Del. 2005) (Delaware standard for negligent misrepresentation); *Gennari*

*v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) (New Jersey standard for fraud); *H.*

*Rosenblum, Inc. v. Adler*, 461 A.2d 138, 143 (N.J. 1983) (New Jersey standard for negligent

misrepresentation); *Daibo v. Kirsch*, 720 A.2d 994, 998-99 (N.J. Super. Ct. App. Div. 1998)

(New Jersey standard for equitable fraud).

In this case, Defendants fail to allege an underlying representation by Plaintiff in

connection with Count II of the Amended Counterclaim.  To the extent that the Amended

Counterclaim addresses the matter of alleged representations, it relies on documents attached to the Amended Counterclaim. (*See* Am. Counterclaim ¶¶ 2-4 (referring to Exhibits 1A, 1B, 1C, & 1D).) After reviewing those documents, however, this Court finds that they simply do not set forth a "representation" that is sufficient to sustain Defendants' causes of action for fraud, negligent misrepresentation, or equitable fraud. First, as already noted, those documents concern corporate entities that are not parties to this action. Exhibit 1A appears to be an internal memorandum that was not sent to Defendants. Exhibit 1B is an "initial proposal" from SMS to TLC. Exhibit 1C is an undated promissory note purportedly from TLC to SMS. Finally, Exhibit 1D is a purported addendum to a leasing schedule concerning TLC that is unsigned by anyone other than Defendants. There is simply no allegation that these documents contain a representation from Plaintiff to Defendants. Accordingly, Plaintiff's Motion to Dismiss is GRANTED with respect to Count II of the Amended Counterclaim.

**E.     Other Problems with the Amended Counterclaim.**

Defendants face numerous other problems with respect to the causes of action set forth in their Amended Counterclaim. First, Defendants' fraud claims are not pled with sufficient particularity. Rule 9(b) of the Federal Rules of Civil Procedure requires allegations of fraud to be plead with "particularity." The United States Court of Appeals for the Fourth Circuit has held that Rule 9(b) requires a complaint of fraud to include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). As already noted, Defendants have failed to identify the allegedly false representations in connection with their tort claims. As a result, those claims do not comply with the requirements

of Rule 9(b).

Second, even if Defendants successfully alleged a contractual relationship in connection with their Amended Counterclaim, any claims arising out of that relationship belong to TLC, not Defendants. Defendants attempt to defuse this argument by emphasizing their status as guarantors to the contracts involving TLC. However, "a guarantor, when suited by the principal's creditor pursuant to a guaranty agreement, cannot rely on an *independent* cause of action existing in favor of the principal against the creditor as a defense or a counterclaim." *Continental Group, Inc. v. Justice*, 536 F. Supp. 658, 661 (D. Del. 1982) (emphasis added); *see also Pepe v. General Motors Acceptance Corp.*, 604 A.2d 194, 196 (N.J. Super. Ct. App. Div. 1992) ("The law is clear and uniform: shareholders cannot sue for injuries arising from the diminution in value of their shareholdings resulting from wrongs allegedly done to their corporations."). This constitutes yet another reason for dismissing Defendants' Amended Counterclaim.

Other considerations support this Court's finding that Defendants are not in a position to assert claims belonging to TLC. As noted above, the Amended Counterclaim relies on the following basic allegations: SMS allegedly agreed to loan TLC $175,000 (*See* Am. Counterclaim ¶ 2.); Low and Hogarth allegedly agreed to personally guarantee TLC's obligation to repay the loan. (*Id.*); and SMS allegedly refused to provide this loan. (*Id.* at ¶ 9.) Low and Hogarth's liability in connection with this alleged transaction is based entirely on their agreement to personally guarantee the loan at issue. However, if that loan was never made, it follows that Low and Hogarth would never be liable for TLC's failure to repay the loan. Moreover, there is simply no basis for concluding that Low and Hogarth were intended beneficiaries of the alleged loan

21

from SMS to TLC.  In sum, Defendants have failed to establish factual or legal support for their contention that "as guarantors, Defendants are entitled to bring any claim or defense that TLC Imaging, L.L.C. might possess."  (Defs' Mem. Supp. Opp. Mot. Dismiss p. 4.)

### E.    Motion for Joinder.

Defendants move to join Siemens Medical Solutions USA, Inc. ("SMS") as a party to this litigation pursuant to Rule 14 of the Federal Rules of Civil Procedure on grounds that SMS "is liable as well" for the "matters alleged in the Counterclaim."  (Defs' Mot. Joinder p. 1.)  Rule 14 provides that a defendant to an action may bring in a third party "at any time after the commencement of the action" where that third-party defendant "may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."  Fed. R. Civ. P. 14(a).

> The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff.  The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough.

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1446 (2d ed. 1990) (footnotes omitted).  After reviewing the parties' submissions, this Court will not permit Defendants to join SMS as a third-party defendant under Rule 14.  First, for reasons explained above, the causes of action that Defendants seek to assert against SMS do not arise from the same transaction or set of facts as the original claim.  Second, Defendants do not seek to transfer to SMS the liability asserted against Defendants by Plaintiff.  Third, Defendants improperly rely on the Amended Counterclaim to bring SMS into this litigation. *See Greene Line Mfg. Corp. v. Fibreboard Corp.*, 130 F.R.D. 397, 400 (N.D. Ind. 1990) ("[T]he liability

required to justify impleader must arise out of *plaintiff's* claim against the defendant and not out of an asserted defense or counterclaim of the defendant.") (emphasis in original).   Fourth, Defendants have failed to allege key elements of their proposed Third-Party Complaint, which mirrors the Amended Counterclaim addressed above.  *See* Discussion § III.B-D, *supra*.  Finally, to allow Defendants to proceed against SMS would only delay Plaintiff's straightforward causes of action relating to the Settlement Agreement.  Accordingly, Defendants' Motion for Joinder is DENIED.

## **CONCLUSION**

Plaintiff's Motion for Summary Judgment (Paper No. 28) is GRANTED, Plaintiff's Motion to Dismiss Defendants' Amended Counterclaim (Paper No. 27) is GRANTED, and Defendants' Motion for Joinder (Paper No. 19) is DENIED.  A separate Order and Judgment follows.

Dated: April 20, 2007

/s/  *Rich D. Bennett*

Richard D. Bennett
United States District Judge